UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES BERNARD BROWN,

                    Plaintiff,

vs.                                    Case No.  2:08-cv-804-FtM-29DNF

LIEUTENANT   RILEY,[1]  SERGEANT   PIKE,
UNKNOWN    SERGEANT   and   UNKNOWN
OFFICER,

                    Defendants.
_____/

## OPINION AND ORDER

### I.

This matter comes before the Court upon review of the Motion for Summary Judgment (Doc. #69, Pike's SJ Motion), filed on behalf of Defendant Pike.  In support of the Motion, Defendant files supporting exhibits (Pike's Exhs. A-R).  The Court also reviews the Motion for Summary Judgment (Doc. #77, Riley's SJ Motion) filed on behalf of Defendant Riley and supporting exhibits (Riley's Exhs. A-J) on June 9, 2010.  Plaintiff has not filed a response to either motion for summary judgment, despite the Court's Orders to do so, and the deadlines have expired.  See docket; Doc. #32, ¶10; Doc. #78.  These matters are ripe for review.

_____

[1]Plaintiff named a Defendant "Rally," but it appears the correct spelling of this Defendant's last name is "Riley."  Also, it appears Defendant "Pikes" last name should be spelt "Pike."  The Court will direct the **Clerk of Court** to correct the spelling of these Defendants' names on the docket.

**II.**

James Bernard Brown, a *pro se* plaintiff, initiated this action by filing a prisoner's Civil Rights Complaint Form (Doc. #1) pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding in this action on his Amended Complaint (Doc. #13, Amended Complaint) and attached exhibits (Doc. #13-1, Pl's Exh.), which names the following defendants: Lieutenant Riley, Sergeant Pike, and two unnamed defendants who Plaintiff identifies as a "sergeant" and an "officer" at Charlotte Correctional Institution (hereinafter "Charlotte Correctional"). Amended Complaint at 1.

The Amended Complaint alleges an Eighth Amendment violation stemming from a sexual assault by Plaintiff's cellmate on two occasions in April 2008 at Charlotte Correctional. Id. at 9-10. According to the Amended Complaint, on April 4, 2008, Plaintiff was moved into a cell with inmate Lewis. Id. at 8. Plaintiff states that inmate Lewis began asking Plaintiff for "sexual favors." Id. At approximately 12:15 a.m. on April 5, 2008, Plaintiff alleges that inmate Lewis grabbed Plaintiff and forcibly committed sodomy[2] on him.[3] Id. at 9. Plaintiff states that he reported the event to Defendant Pike at 8:30 in the morning and told him that he "in fear

_____

[2]The Court uses the term "sodomy" in place of the graphic description Plaintiff provides in his Complaint. See Amended Complaint at 9.

[3]Plaintiff states the incident occurred after the "shift change" had taken place.

-2-

of his life," and that inmate Lewis was threatening that he was going to commit sodomy again on him. Id. Plaintiff also states that he told Defendant Pike that inmate Lewis was threatening physical harm if Plaintiff told anyone about the incident. Id. Plaintiff states that Defendant Pike told him that he had to speak with the "acting Lieutenant" of B-Dormitory. Approximately one hour later at 9:30 a.m., Plaintiff states that Defendant Lieutenant Riley conducted security rounds. Id. at 10. At that time, Plaintiff states that he told Riley about Lewis committing sodomy on him and Lewis' threats of physical harm if he told. Plaintiff avers that Defendant Riley told Plaintiff he would do a "cell exchange." Id.

By 4:30 p.m., Defendant Riley had not moved Plaintiff from the cell, so Plaintiff told an unidentified sergeant doing rounds that Lieutenant Riley was suppose to have moved him to a different cell. Id. The sergeant presumably went to speak with Defendants Riley and Pike, and returned to Plaintiff's cell informing him that Riley was going to move Plaintiff, but Sergeant Pike told Lieutenant Riley that Plaintiff was not having "any problems" with his cellmate. Id. Plaintiff told the unidentified sergeant about the threats of physical harm and the sodomy, but the sergeant told Plaintiff that he "can't over rule Lieutenant Riley." Id.

Approximately a week later, on April 12, 2008, at approximately 12:10 a.m., Plaintiff submits that inmate Lewis again

-3-

committed forced sodomy on him.  Plaintiff states that he told an officer about the incident at 8:00 in the morning, but the officer refused to take any action.  Id.  Around 8:00 p.m. when Plaintiff was escorted to the shower, Plaintiff refused to return to his cell.  Plaintiff states that he told the officer he had been "assaulted" twice by inmate Lewis.  Id.  Plaintiff states that the officer then called a sergeant.  Id. at 11.  Plaintiff submits that he told the sergeant that his cellmate had sexually assaulted him twice and threatened physical harm if he told any officers.  Id.  The sergeant contacted the shift officer in charge and escorted Plaintiff to his cell to pack his personal belongings before moving.  Id.  The facts are undisputed that when Plaintiff returned to his cell to pack his personal belongings, inmate Lewis physically attacked Plaintiff.  Id.; Mot. SJ. at 3-4.  The officers used chemical agents on inmate Lewis to gain control of him.  Id.  Both inmates were allowed to shower and brought to the medical department for a post-use-of-force examination.  Id.  The record contains grievances, *inter alia*, that Plaintiff filed alleging the same facts as alleged in the Complaint submitted on the day of the second incident, April 12, 2008, Pl's Exh. At 7; and, the day after the second incident on April 13, 2008.  Id. at 4.

**III.**

Defendants Pike and Riley move for summary judgment.  In pertinent part, Defendants argue that they were not aware that Plaintiff had been sexually assaulted, or in fear of a future sexual assault, because Plaintiff only told him that he had "[been] taken advantage of" by his cellmate, inmate Lewis, after the first incident.  Mot. SJ. at 5.  Defendants, *inter alia*, also assert that they are entitled to Eleventh Amendment Immunity and Qualified Immunity.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." Swisher International, Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).  The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the

party opposing summary judgment, Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., Slip Copy, 2006 WL 288932 *1 (M.D. Fla. 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." Lofton v. Sec'y Dep't of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex, 477 U.S. at 323). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529

(2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.  Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).  The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities."  Beard, 548 U.S. at 530.  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling in a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

**IV.**

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001);  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266 (1994)(plurality opinion).  In the case *sub judice*, Plaintiff claims a violation of his Eighth Amendment rights based on the Defendants' failure to protect him from his cellmate.

**A.  Eighth Amendment- Failure to Protect Claims**

The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  "Having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course."  Id.  However, not every injury that an inmate suffers at the hands of another inmate "translates into a constitutional liability."

-8-

Id. at 834.  A prison official violates the Eighth Amendment when
he or she acts with deliberate indifference to a substantial risk
of harm.  Id. at 828.

A plaintiff must allege facts to satisfy both an objective and
a subjective inquiry regarding a prisoner official's conduct.  See
Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010)
(reviewing standard for failure to protect claim)(citing Chandler
v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  Under the
objective component, a prisoner must allege that a prison condition
is so extreme that it poses an unreasonable risk of serious damage
to a prisoner's health or safety.  To satisfy the subjective
component, the prisoner must allege that the prison official, at a
minimum, acted with a state of mind that constituted deliberate
indifference.  "Deliberate indifferent has three components: (1)
subjective knowledge of a risk of serious harm; (2) disregard of
that risk; (3) by conduct that is more than mere negligence."
Richardson, 598 F.3d at 737 (citing Farrow v. West, 320 F.3d 1235,
1245 (11th Cir. 2003)).  In other words, plaintiff must demonstrate
that the defendant was aware of specific facts from which an
inference could be drawn that a substantial risk of serious harm
exists and that the prison official drew that inference.  Purcell
v. Toombs County, GA., 400 F.3d 1313, 1319-20; Carter v. Galloway,
352 F.3d 1346, 1349 (11th Cir. 2003).  To show that an official had
subjective knowledge, the court is to inquire whether the defendant

was aware of a "particularized threat or fear felt by [the plaintiff]." <u>Carter</u>, 352 F.3d at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. <u>Farmer</u>, 511 U.S. at 838. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. <u>Id.</u> at 842; <u>McBride v. Rivers</u>, 170 Fed. Appx. 648 (11th Cir. 2006). "[T]o survive summary judgment on his section 1983 claim, [Plaintiff] [is] required to produce sufficient evidence of: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." <u>Carter</u>, 352 F.3d at 1349 (quoting <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1582 (11th Cir. 1995)).

### 1.  Rape Claims

The Court is required to "make all reasonable inferences" in favor of Plaintiff, the non-moving party.  Plaintiff does not suggest in his Complaint that the Defendants are liable for the first incident of sodomy.  There is no evidence in the record that Plaintiff's cellmate sexually assaulted other inmates before the first sexual assault on Plaintiff, or that his cellmate was a well-documented "problem" inmate.  However, the record is clear that after the first sexual assault, Plaintiff's continued to ask prison officials for a different cell assignment.  Plaintiff's continued

assignment with the cellmate that committed forced-sodomy on him posed a substantial risk of serious harm to Plaintiff.  See LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993)(finding inmates were exposed to unnecessary pain and suffering when there was evidence of unreasonable exposure to violence and sexual assaults).

The record establishes that Plaintiff spoke to multiple prison officials, including Defendants Pike and Riley, expressing his desire to move from his cell because of his cellmate's actions and threats.  See Complaint; Pike's Exh. H at 4.  Plaintiff submits that approximately eight hours after his cellmate committed the first sexual assault on him, he spoke to Defendant Pike who said he had to check with the acting Lieutenant before moving him. Complaint at 10; Pl's Exhs. at 4, 7; Pike's Exh. H at 3.  An hour and a half later on that same day, Plaintiff spoke to Defendant Lieutenant Riley.  Complaint at 10.  Defendants Pike and Riley do not dispute that Plaintiff spoke to them and told them, with respect to the sexual assault, that he was "taken advantage of" by his cellmate.  Pike Mot. SJ at 5; Riley Mot SJ at 12.  Plaintiff also told Lieutenant Riley that he did not "feel comfortable" being in the cell with the cellmate.  Pike's Exh. H at 4.  According to Plaintiff's deposition testimony, Defendant Riley told Plaintiff that "there [weren't] [any] cells available in Bravo dorm but he would try to move [him] to Gulf dorm, which is his assigned dorm, but he [couldn't] do it until Monday and [asked] if [Plaintiff]

could just ride out until Monday. [Plaintiff] told him [that] [he] could [wait] and then [Riley] approved to assign [Plaintiff] [] to move . . . to cell 205 on top just until Monday come [sic]." Pike Exh. H. at 4. Later that same evening, Plaintiff spoke to a third officer, telling him that Defendant Lieutenant Riley was going to do a cell exchange. Amended Complaint 10. When the officer returned and relayed the information to Plaintiff that Defendant Riley was not going to move him to a different cell, Plaintiff also states that he spoke to this unidentified officer about the sexual assault incident. Id.

Because neither Plaintiff, nor his cellmate were removed from the cell after the first forced-sodomy, approximately a week and a half later Plaintiff was sexually assaulted a second time by his cellmate. Id. Plaintiff states that after the second incident he told an unidentified officer who took no action. Later that evening, Plaintiff refused to return to his cell after a shower and spoke to the escorting officer, who called a sergeant. Id. Plaintiff submits that he told the sergeant about the two sexual assaults and threats of physical harm if he told the officers about the sexual assaults. The sergeant contacted the shift officer in charge, who escorted Plaintiff to his cell to pack his personal belongings before moving. Id.; Pike's Exh. H at 4. The parties do not dispute that Plaintiff's cellmate physically attacked him while

he was packing his personal belongings to move and the officers had to use force on the cellmate.

Defendants argue in their respective Motions for Summary Judgment that they were not aware of a "particularized threat" of sexual assault because Plaintiff only told them that he had been "taken advantage of" by his cellmate.  See generally Pike Mot. SJ; Riley Mot. SJ.  As stated *supra*, whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence.  Farmer, 511 U.S. at 842.  Defendants opine that "[t]he phrase **taken advantage of**" does not infer that a sexual assault had occurred, nor does it infer that [Plaintiff] faced a risk of substantial harm.  In fact, the phrase is more commonly used to mean, outwit or overreach."  Pike Mot. SJ at 12 (emphasis in original); Riley Mot. SJ at 12 (emphasis in original).

Plaintiff acknowledges that he never gave "full details" about the sexual assaults because "there were other people around" and that it was difficult to get a private conversation with a Sergeant or a Lieutenant.  Pike's Exh. H. at 3.  However, Plaintiff also stated during his deposition that Riley recognized that there was a need to move Plaintiff, but apparently could not move Plaintiff because there were no other available cells, and then never moved Plaintiff.  Id.  Plaintiff further averred during his deposition that "no one would listen [to him].  No one did any type of . . ." Id. at 4.

The Court finds that there is a question of material fact regarding whether Defendants Riley and Pike had knowledge of the particular threat to Plaintiff before the second sexual assault occurred, thereby precluding the entry of summary judgment for Defendants.  A reasonable jury could find that Defendants, based on their experience, knowledge of terminology used in jails, and the context of this case, did understand that Plaintiff's cellmate had sexually assaulted him when Plaintiff told them he had been "taken advantage of" by his cellmate.  A jury may also consider the fact that Plaintiff was eventually moved from the cell by other unidentified corrections officers, and that Defendants Pike and Riley should have moved him earlier under the facts known to them.

Defendants also argue that Plaintiff has failed to demonstrate that they failed to respond in an "objectively unreasonable manner." Pike Mot. SJ at 12; Riley Mot. SJ at 13.  The record evidences that Defendants Pike and Lieutenant Riley took no action whatsoever after Plaintiff first reported "being taken advantage of."  The record shows Defendants conducted no further inquiry, no private conversation with Plaintiff, and no investigation.  Obviously Plaintiff was not moved away from his cellmate after Plaintiff first reported that he had been "taken advantage of."  If Defendants' understood Plaintiff's statement that he was "taken advantage of" to mean that he had been sexually assaulted during the night by his cellmate, then the Defendants' failure to take any

action whatsoever to protect Plaintiff is objectively unreasonable. Cottone, 326 F.3d at 1358-59. Indeed, if Defendant Riley refused to move Plaintiff from the cell because there were "no other available cells," as alleged by Plaintiff in his deposition testimony, Riley's response was objectively unreasonable. It was not until the second sexual assault occurred that unidentified officers responded to Plaintiff's complaints and escorted him back to his cell to pack his personal belongings before moving him. Therefore, the Defendants' Motions for Summary Judgment are denied on Plaintiff's Eighth Amendment claim stemming from the second sexual assault because questions of material fact remain.

**2. Physical Assault Claim**

Plaintiff also alleges that his Eighth Amendment rights were violated when he was "physically assault[ed]" by his cellmate. Amended Complaint at 8. This physical assault occurred after Plaintiff had showered and reported to the unidentified officers that he had been sexually assaulted twice by his cellmate. Upon Plaintiff's statements, the officers escorted Plaintiff back to his cell to pack his personal belongings in order to move Plaintiff to a different cell. Id. Specifically, the Complaint alleges:

> So on or aroun[d] 8 p.m. when the officer pull me
> out of my cell to take a shower [sic]. And when the
> officer (unknown) came to get me out of the shower to go
> back my to my confindment [sic] cell I had refuse to go
> back to my cell. I [i]nform the officer (unknown) right
> then their that I am in fear of my life that I been
> sexual assaulted two time[s] by Inmate Lewis 121159. And
> that I am in fear that Inmate Lewis will sexual assault

me again and do bodily harm to me if he finds out that I
told you'll (officers) about the sexual assault.

Then the officer had left and report what I said to
the sergeant (unknown) that I had reported that I been
sexually assaulted and that I refuse to go back to the
confindment [sic] cell.  Then the sergeant (unknown) ask
me what happen and whats going [sic].  I then began to
tell the sergeant (unknown) about the two sexually
assault's And the threat of bodily harm if he (inmate
Lewis) finds out that I went to the officer.   Then
sergeant (unknown) told me that he got to contact the
shift officer in charge (captain) before he can move me.
But he want me to go back in to the confindment [sic]
cell and pack my personal belong[ings].   And he'll be
back in five minute's to move me.

So the officer (unknown) and the sergeant (unknown)
took me back to my confindment [sic] cell.  When I got
back to my confindment [sic] cell the sergeant had
(unknown) left.  And the officer (unknown) was standing
their when inmate Lewis 121159 got up and physically
attact [sic] me while I was packing my personal
belonging.

The officer (unknown) then use of force in inmate
Lewis 121159 with his state issue pep[p]er spray.  Then
the officer's (his assistant) came in to assist the
officer (unknown).

Then I was seen by medical staff and the shift
officer in charge . . . came around and did his
investigation.

Id. at 10-11.

At the outset, with respect to the "unknown" defendants, the

Complaint is fatally flawed.  Plaintiff only identifies the

Defendants as "officer (unknown)" and "sergeant (unknown)."

Complaint at 10-11.  "Fictitious party practice is not permitted in

federal Court."  Richardson, 598 F.3d at 738; Rolle v. Brevard

County, Florida, No. 6:06-cv-714, 2007 WL 328682 * 14 (M.D. Fla.

Jan 31, 2007) (citing New v. Sports Rec., Inc., 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997)) (other citations omitted). Although Plaintiff identifies the Defendants as a "sergeant" and an "officer" at Charlotte Correctional Institution, this information has been insufficient for the Court to effect service of process on these Defendants. See Id.; Dean v. Barber, 951 F.2d 1210, 1215-1216 (11th Cir. 1992). Thus, at this time, the Court dismisses Plaintiff's Eighth Amendment claim stemming from his cellmate's physical assault on him against Defendants "sergeant (unknown) and "officer (unknown)," without prejudice.

With respect to Defendants Riley and Pike, the Complaint alleges that Plaintiff had previously told these Defendants that his cellmate was threatening physical harm if he told any officers about the sexual assaults. Complaint at 9-10. Defendants do not dispute that "[o]n April 12, 2008, a Use of Force was necessary to stop inmate Lewis from punching Brown." Riley Mot. SJ at 3-4 (citing Exh. B); Pike's Mot. SJ at 3 (citing Exh. B). Defendants submit that "as soon as [prison officials] were put on notice that Brown and Lewis were involved in a physical altercation, the prisoners were separated." Pike Mot. SJ at 14. Defendants, however, do not produce evidence to contradict Plaintiff's allegations that he warned them before the physical assault occurred about his cellmate's threats of physical harm if Plaintiff told any officers. Defendants merely allege that they are entitled

to qualified immunity on this claim because "[n]othing in the record indicates that [Defendants] knew of a substantial risk of serious harm prior to this physical altercation." Riley Mot. SJ at 17; Pike Mot. SJ at 17.  Defendants are simply incorrect.  In pertinent part with respect to Plaintiff's failure to protect claims, Defendants' argument focuses on the claim stemming from the sexual assaults, not the subsequent assault.  See Riley Mot. SJ at 12-14; Pike Mot. SJ at 11-13.

Construing the facts in favor of the non-moving party and considering that Defendants failed to produce any evidence, see generally Riley Exh. I, Pike Exh. I, disputing Plaintiff's allegations that he warned the officers about his cellmate's threats of physical harm, the record leaves a question of material fact as to Defendants Riley and Pike's failure to protect Plaintiff from his cellmate's physical attack.  Defendants' motions are denied with respect to this claim.

B.  **Qualified Immunity**

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, _____ U.S. _____, 129 S.Ct. 808, 815 (2009).  Qualified immunity protects governmental officials, who are acting in their discretionary authority, "'from liability

for civil damages insofar as their conduct does not violate [a] clearly established statutory or constitutional right of which a reasonable person would have known." Pearson, 129 S.Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(other citations omitted)). "[A] government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).

Prior to the Pearson decision, the United States Supreme Court mandated the following two-step analysis in resolving matters involving qualified immunity. Id.; but see Fennell v. Gilstrap, 559 F.3d 1212, 1217 n. 6 (11th Cir. 2009)(recognizing that Supreme Court no longer mandated a two-step qualified immunity analysis, but noting it is "often beneficial" to do so). First, the court must decide whether the facts that plaintiff has set forth state a violation of a constitutional right. Pearson, 129 S.Ct. at 815-816. If plaintiff satisfies this first step, then the court must decide whether the right was "'clearly established.'" Id. at 816 (citations omitted). The courts have discretion to determine whether they will address both prongs of the qualified immunity analysis and in which order. Pearson, 129 S.Ct. at 821.

Here, as previously mentioned, Defendants assert that they are entitled to qualified immunity with respect to Plaintiff's failure to protect claim stemming from the physical altercation.   Riley Mot. SJ at 17-18; Pike Mot. SJ at 17-18.   Defendants submit that because Plaintiff does not allege a violation of a constitutional right, they are, thereby, entitled to qualified immunity.   Pike Mot. SJ at 18; Riley Mot. SJ at 18.

The Court denies Defendants' motions to the extent they argue they are entitled to qualified immunity.   The Court finds that Plaintiff has set forth a violation of his constitutional rights stemming from the Defendants' failure to protect him from his cellmate after the first sexual assault took place and from his cellmate's later physical assault.   The Court has determined that questions of material fact remain on these claims prohibiting the entry of summary judgment in favor of the Defendants. Additionally, the law is clearly established with respect to Plaintiff's failure to protect claims.   See Farmer, 511 U.S. at 833; Chandler, 379 F.3d at 1289; Carter, 352 F.3d 1346.

**C.  Sovereign Immunity**

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent."   Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), cert. denied, 540 U.S. 1107 (2004).   "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued

directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167, n. 14 (1985). This protection under the Eleventh Amendment is afforded to the State, State agencies, and State officials sued in their official capacities, as it is well established that a suit against a governmental officer in his official capacity is the same as a suit against the entity that employs the officer. Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). See also Gamble v. Florida Dep't of Health and Rehab. Serv., 779 F.2d 1509, 1512 (11th Cir. 1986). The State of Florida has not waived sovereign immunity for § 1983 actions. Zatler, 802 F.2d at 400 (citing Gamble, 779 F.3d at 1513-20).

Here, the Amended Complaint does not specify whether Plaintiff is suing the Defendants in their individual and official capacities. See generally Amended Complaint. Additionally, the Amended Complaint contains no allegations that an official policy or practice contributed to the officers' failure to protect him from his cellmate's attacks. Id. Nevertheless, to the extent Plaintiff seeks monetary damages from Defendants Pike or Riley in their official capacities, the claim for monetary damages is dismissed. The Eleventh Amendment, however, does not preclude Plaintiff from recovering monetary damages against the Defendants in their individual capacities.

### D.  Damages

Defendants refer the Court to the Complaint and point out that Plaintiff seeks punitive damages totaling $50,000 from each Defendant.  Defendants argue that section 1997e(e) provides "no action may be brought by a prisoner . . . for mental or emotional injury while in custody without a prior showing of physical injury."  Pike Mot SJ at 14-15; Riley Mot SJ at 15.  Defendants aver that the physical injury requirement must be more than *de minimus* physical injury.  Id. (citing Harris v. Garner, 190 F.3d 1279, 1277 (11th Cir. 1999)).  Therefore, Defendants argue that Plaintiff is not entitled to compensatory or punitive damages.  Id. Defendant Riley also argues that Plaintiff's claim for injunctive relief is now moot.  Riley Mot. SJ at 19.

According to the Complaint, Plaintiff seeks the following relief: an order directing that the Defendants should have no contact with Plaintiff; $50,000 in damages for Plaintiff's physical, mental and emotional suffering; reimbursement for the costs of filing this civil action, and reimbursement of Plaintiff's medical and mental health costs.  Complaint at 13.  Plaintiff also seeks the return of certain items, including his boxer shorts, socks, toothpaste, and other personal items that he alleges are missing.  Id.  Indeed, in response to one of his inmate grievances concerning the return of his boxer shorts, a prison official

indicated that Plaintiff's boxer shorts would be returned to him "once the case [was] closed."  Pl's Exh. at 6.

Defendants are correct in pointing out that § 1997e(e) limits the type of damages a prisoner may receive when seeking relief for emotional damages.  Specifically, § 1997e(e) states, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimus."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-12 (11th Cir. 2002).  However, even when § 1997e(e) bars recovery of compensatory damages, "the availability of punitive and/or nominal damages in certain cases is still an open question in this Circuit."  Chatham v. Adcock, 334 Fed. Appx. 281, 284 (11th Cir. 2009)(citing Hughes v. Lott, 350 F.3d 1157, 1161 (11th Cir. 2003)(quotation omitted)).

At the outset, the Court notes that Plaintiff seeks not only emotional damages, but also damages for his physical injuries stemming from the second time he was forcibly sodomized by his cellmate, and the subsequent physical assault.  Amended Complaint at 13.  Specifically, Plaintiff states that he "began to make noise because of the pain that I was suffering.  When everything was

[sic] I clean up the blood and the area where the act had taking [sic] place." Amended Complaint at 9. With regard to his cellmate's physical attack, the correctional officer who responded to the attack reported that "Lewis physically attacked Brown," by "striking inmate Brown [Plaintiff] with closed fists in the facial area. [The officer] gave Inmate Lewis several orders to cease his assault, to no avail. Inmate Lewis then threw Inmate Brown on the floor and started kicking him." Pike Mot. SJ at 3. Thus, the Court concludes that the record contains allegations of more than *de minimus* physical injury, satisfying § 1997e(e).

With respect to Plaintiff's request for injunctive relief, the Court is persuaded by Defendant Riley's argument that the Plaintiff's request for injunctive relief is now moot in light of his release from the Department of Corrections. Article III of the Constitution restricts the jurisdiction of the federal courts to "cases" or "controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). This limitation prohibits courts from considering moot questions because such questions cannot present an active case or controversy, thus, the court lacks subject matter jurisdiction. U.S.C.A. Const. Art. III. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004). Cases can be rendered moot due to a change in circumstances or a change in law. Id. at 1328. In this case, Plaintiff's release from the Department of Corrections moots his request for injunctive

relief.  See Dudley v. Stewart, 724 F.2d 1493, 1494  (11th Cir. 1984)(finding claim for monetary damages unaffected by prisoner's release from custody, but request for injunctive relief moot by release).  Therefore, the Court grants Defendant Riley's motion for summary judgment and denies Plaintiff's request for injunctive relief.  Any matters raised in the Defendants' respective motions that were not addressed herein are deemed without merit.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The **Clerk of Court** shall correct the spelling of the Defendant Riley incorrectly named as "Rally," and Defendant Pike, incorrectly named "Pikes."

2.  The Motions for Summary Judgment filed on behalf of Defendants Pike (Doc. #69) and Riley (Doc. #77) are **GRANTED to the limited extent** that Plaintiff's claim for injunctive relief is denied as moot and any claim for monetary damages against the Defendants' in their official capacities is precluded by Eleventh Amendment Immunity.  In all other respects, the Defendants' respective motions are **DENIED.**

3.    Defendants  unknown  sergeant  and  unknown  guard  are **DISMISSED,** without prejudice.[4]

4.  The Clerk of Court shall enter judgment accordingly.

**DONE AND ORDERED** in Fort Myers, Florida, on this __4th__ day of August, 2010.


_____
JOHN E. STEELE
United States District Judge


SA: alj

Copies: All Parties of Record

---

[4]Plaintiff may seek leave to amend his Amended Complaint when, and if, he is able to identify the names of these unknown officers.